**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TANYA DOLISON, Individually and as a Representative of the Class,**<br>**Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC,**<br>**Defendant.** | **NO. 15-3135** |

**DuBois, J.**                                                                                      **February 12, 2019**

**M E M O R A N D U M**

## I.      INTRODUCTION

In this putative class action, plaintiff Tanya Dolison asserts, on behalf of herself and similarly situated individuals, that defendant SavaSeniorCare Administrative Services, LLC ("Sava") violated the stand-alone disclosure requirement of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*  The putative class members are any individuals whose consumer report was procured by Sava for employment purposes in the period beginning two years prior to the filing of the Complaint and continuing through the date the class list is prepared for class certification.  Presently before the Court is Plaintiff's Motion for Class Certification (Document No. 45) and defendant Sava's Motion to Dismiss Plaintiff's Claim for Lack of Standing (Document No. 47) pursuant to Federal Rule of Civil Procedure 12(b)(1).  For the reasons that follow, the Court grants Sava's Motion to Dismiss and denies plaintiff's Motion for Class Certification.

## II.      BACKGROUND[1]

Plaintiff worked as a Dietary Assistant at the Broomall Rehabilitation and Nursing Center ("Broomall Center") in Broomall, Pennsylvania, from approximately November 1998 through

---

[1] The facts set forth in this Memorandum are drawn from the record before the Court.

April 2014.  Sec. Am. Compl. ¶ 26.  The Broomall Center is a nursing facility that provides care

and rehabilitation services to its residents.  Def. Mot. Dismiss 3.  In 2014, defendant, Sava,

acquired control of the Broomall Center through Broomall Operating Company LP.  Pl. Resp.

Mot. Dismiss 3.  As a part of the change in operations, all the employees at the Broomall Center

were required to participate in a "re-application" process.  Def. Mot. Dismiss 3.  During this re-

application process all employees were given, and asked to complete, documents contained in an

Employee Documents Book ("EDB").  *Id.*

The central allegation in this case is that defendant, Sava, failed to provide a consumer

report disclosure that complied with the dictates of the FCRA.  The FCRA provides that:

> a person may not procure a consumer report, or cause a consumer report to be
> procured, for employment purposes with respect to any consumer, unless—
> (i)     a clear and conspicuous disclosure has been made in writing to the
>       consumer at any time before the report is procured or caused to be
>       procured, in a document that consists solely of the disclosure, that a
>       consumer report may be obtained for employment purposes; and
> (ii)    the consumer has authorized in writing . . . the procurement of the report
>       by that person.

15 U.S.C. § 1681b(b)(2)(A).  Plaintiff asserts that her consumer report was procured through a

disclosure contained in a booklet, the EDB, as opposed to in a document consisting solely of the

disclosure and that the disclosure inappropriately contained a liability waiver, releasing

defendant of any and all liability.  Pl. Resp. Mot. Dismiss 2–3; Sec. Am. Compl. ¶¶ 12–13.

The EDB consisted of approximately sixty pages.  Of those pages, thirty-five contained

printed information and twenty-five of the pages were blank.  Sec. Am. Compl. ¶¶ 11–12.  In the

thirty-five pages with text, the EDB contained forms relating to a wide-range of topics including

data collection, credit checks, background checks, FCRA, taxes, drug-testing and substance

abuse, employee timekeeping and payroll, meal periods, time off, the Family Medical Leave Act,

workers compensation, affirmative action, treatment of residents, treatment of defendant's

proprietary and confidential information, and cell-phone usage. *Id.* at ¶ 13. Appearing as a one-

page document in the EDB was the form at issue in this case, a document entitled

"Notice/Authorization and Release for Background Check," hereinafter referred to as the

"Consent Form." Sec. Am. Compl. ¶ 13. In relevant part, the Consent Form states:

> I, the undersigned consumer, do hereby authorize the Facility by and through its independent contractor, Kroll Background America, Inc. (KBA) located at 100 Centerview Drive, Suite 300, Nashville, TN 37214 to procure a consumer report and/or investigative consumer report on me.
>
> These above-mentioned reports may include, but are not limited to, information as to my character, general reputation, personal characteristics, and mode of living discerned through employment and education verifications; . . . criminal and civil history/records; and any other public records.
>
> I understand that I am entitled to a complete and accurate disclosure of the nature and scope of any investigative consumer report of which I am the subject upon my written request to KBA, if such is made within a reasonable time after the date hereof. I also understand that I may receive a written summary of my rights under 15 U.S.C. § 1681 et seq.
>
> I authorize any person, business entity, or governmental agency who may have information relevant to the above to disclose the same to the Facility by and through KBA, including, but not limited to any and all courts, public agencies, law enforcement agencies, and credit bureaus, regardless of whether such person, business entity, or governmental agency compiled the information itself or received it from other sources.
>
> I hereby release the Facility, KBA, and any and all persons, business entities and governmental agencies, whether public or private, from any and all liability, claims, and/or demands, by me, my heairs [sic], or others making such claim or demand on my behalf, for providing a consumer report and/or investigative consumer report hereby authorized. I understand that this Notice/Authorization and Release form shall remain in effect for the duration of my employment.
> . . . .

*See* Def. Mot to Dismiss, Ex. 3. The final paragraph of the Consent Form excerpt above includes

the contested liability waiver language. The remainder of the form asks for information and a

signature.

Plaintiff filled out the form in November of 2013. *Id.* She included her name, address, date of birth, social security number, and, in response to "Have you ever been convicted of or plead guilty to a crime (felony or misdemeanor) other than a minor traffic violation?" plaintiff checked the "yes" box, indicating that she had. *Id.* At the bottom of the form, plaintiff's signature appears next to the date, November 29, 2013. *Id.* Plaintiff does not dispute that the signature on the Consent Form is hers; however, in her deposition she testified that she does not recall completing the Consent Form. Pl. Resp. Mot. Dismiss 4; Dolison Dep. at 78:7–10, 96:5–16. In fact, plaintiff's first, and only, recollection of receiving an EDB was at a training session in March of 2014.[2]

In addition to the Consent Form, plaintiff's signature appears on eighteen other forms included in the EDB in November of 2013. Pl. Resp. Mot. Dismiss 4. Although Sava conducted training sessions as part of the change in Broomall Center operations, it did not provide instruction regarding the re-application process or the completion of paperwork contained in the EDB. *Id.* Plaintiff testified that she did not recall being confused about the Consent Form or raising any questions or concerns about it. Dolison Dep. at 68:16–69:14. Plaintiff also testified that she typically reads documents before signing them. Dolison Dep. at 22:12.

On January 16, 2014, in response to defendant Sava's instructions, Kroll Background America requested that the Pennsylvania State Police run a criminal record check on plaintiff. Pl. Resp. Mot. Dismiss 5. On January 23, 2014, the Pennsylvania State Police provided Kroll with a document which stated that plaintiff had been convicted in 1999 for violating "Pennsylvania criminal offense code CS13A30," which prohibits the possession and/or manufacture of controlled substances with intent to deliver. Sec. Am. Compl. ¶¶ 29–36. This

---

[2] Although the signed copy of plaintiff's Consent Form is dated November 29, 2013, plaintiff testified that she received a blank copy of an EDB at a training session in March 2014 which she kept and showed to opposing counsel at her deposition. Dolison Dep. at 55:17–56:19.

document also included plaintiff's arrest date and detailed plaintiff's criminal history. Pl. Resp.

Mot. Dismiss 5. On or around April 16, 2014, Sava notified plaintiff that her 1999 conviction

was a disqualifying offense and that as a result her employment at the Broomall Center was

terminated. *Id.*

Plaintiff filed this action on June 5, 2015, on behalf of herself and other putative class

members. Plaintiff filed an Amended Complaint on August 19, 2015, and a Second Amended

Complaint on June 29, 2016. Plaintiff's Second Amended Complaint asserts two claims for

relief: first, that defendant had procured consumer reports without making proper disclosures in

violation of 15 U.S.C. § 1681b(b)(2)(A)(i), and second, that defendant took adverse action

without providing a proper description of FCRA rights in violation of 15 U.S.C.

§ 1681b(b)(3)(A)(ii). On July 5, 2017, Defendant filed a Motion to Dismiss Count Two of

Plaintiff's Second Amended Complaint (Document No. 33). Plaintiff filed a response which

stated that plaintiff "does not oppose [d]efendant's Motion" (Document No. 35, filed July 19,

2017). On July 20, 2017, the Court dismissed the second claim for relief in plaintiff's Second

Amended Complaint with prejudice.

Thus, only one claim for relief is at issue in the present case: plaintiff's claim that

defendant procured consumer reports without first making proper disclosures in violation of 15

U.S.C. § 1681b(b)(2)(A)(i). The crux of this argument is that plaintiff's consumer report was

procured without a disclosure made "in a document consist[ing] solely of the disclosure," also

known as the FCRA's stand-alone disclosure requirement, and that the disclosure contained an

inappropriate liability waiver.

There are currently two motions pending before the Court: (1) plaintiff's Motion for

Class Certification (Document No. 45, filed March 16, 2018), and (2) defendant's Motion to

Dismiss Plaintiff's Claim for Lack of Standing under Rule 12(b)(1) (Document No. 47, filed March 23, 2018).

In plaintiff's Motion for Class Certification, plaintiff argues that she and the putative class satisfy the requirements of Federal Rule of Civil Procedure 23. Pl. Mot. Class Cert. Defendant responded to plaintiff's Motion for Class Certification arguing that class treatment is inappropriate because plaintiff fails to satisfy Rule 23's requirements of ascertainability, predominance, adequacy, and superiority (Document No. 57, filed April 27, 2018). Def. Resp. Mot. Class Cert. 2. Plaintiff filed a reply in support of her Motion for Class Certification on May 25, 2018 (Document No. 61).

In defendant's Motion to Dismiss under Rule 12(b)(1), Sava argues that plaintiff does not have standing because (1) plaintiff cannot demonstrate that Sava's alleged violation of FCRA's stand-alone disclosure requirement caused her tangible harm or concrete injury, and (2) a bare procedural violation of FCRA's stand-alone disclosure requirement cannot confer Article III standing. Def. Mot. Dismiss 1-2. Plaintiff responded to Sava's Motion arguing that she suffered concrete injuries and that, in the alternative, the Court should hold that defendant's violation of the stand-alone disclosure requirement, by itself, is sufficient to confer standing. Pl. Resp. Mot. Dismiss 2. Defendant filed a reply in support of its Motion to Dismiss on May 18, 2018 (Document No. 60).

Both plaintiff's Motion for Class Certification and defendant's Motion to Dismiss are fully briefed and ripe for decision.

### III.    LEGAL STANDARD

#### A.  <u>Motion to Dismiss under 12(b)(1)</u>

A plaintiff must have standing to pursue a case under Article III of the United States Constitution for a court to have jurisdiction over the case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Two types of challenges to a court's jurisdiction may be made under Rule 12(b)(1): a facial challenge or a factual challenge. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). A facial attack under Rule 12(b)(1) "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). In a facial attack, the court applies the same standard as under Rule 12(b)(6). *Horizon Healthcare Servs.*, 846 F.3d at 633. In a factual attack, however, a court may "weigh and consider evidence outside the pleadings." *Davis*, 824 F.3d at 346. Further, in a factual attack, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

The Third Circuit has "cautioned" that a factual attack under Rule 12(b)(1) must be distinguished from a motion for summary judgment or a motion to dismiss under Rule 12(b)(6). *Davis*, 824 F.3d at 348. A motion for summary judgment under Rule 56, like a motion to dismiss under Rule 12(b)(6), "necessitates a ruling on the merits of the claim." *Mortensen*, 549

F.2d at 891.  However, "[t]he standing requirement is analytically distinct from the merits of the underlying dispute." *Davis*, 824 F.3d at 348.  Consequently, in addressing a jurisdictional attack under Rule 12(b)(1), "a district court must take care not to reach the merits of a case." *Id.*  While Rules 12(b)(6) and 56 provide procedural safeguards such as drawing all reasonable inferences in favor of the nonmoving party, a factual attack under Rule 12(b)(1) allows "the trial court [to] proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56." *Mortensen*, 549 F.2d at 891. Consequently, granting a motion under Rule 12(b)(1) "is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Davis*, 824 F.3d at 34 (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983)); *accord Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir. 1991) ("Rule 56 rather than Rule 12(b)(1) should be used in such instances where the jurisdictional question is intertwined with the merits of the case." (internal quotation marks omitted)).

Sava's Motion to Dismiss is a factual attack under Rule 12(b)(1). The jurisdictional issue—whether plaintiff has suffered a concrete harm—is not "intertwined" with the merits of plaintiff's case—namely, whether Sava's violated the FCRA's "stand-alone" requirement.  In addressing that issue, the Court is permitted to consider facts of record beyond those stated in the Second Amended Complaint under Rule 12(b)(1).

### B.  <u>Class Certification</u>

Plaintiff has also filed a Motion for Class Certification.  Subsection (a) of Federal Rule of Civil Procedure 23 sets out four prerequisites for a class action: numerosity, commonality, typicality, and adequacy.  Subsection (b) provides additional requirements for each type of class action.  To obtain certification under Rule 23(b)(3), as plaintiffs seek in this case, the moving

party must also show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are known, respectively, as predominance and superiority.

A district court must conduct a "rigorous analysis" in deciding whether to certify a class. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008). "[T]he decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met." *Id.* at 307. "Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence." *Id.*

Moreover, "the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.* at 307. However, "there is no 'claims' or 'merits' litmus test incorporated into the predominance inquiry beyond what is necessary to determine preliminarily whether certain elements will necessitate individual or common proof." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 305 (3d Cir. 2011). "[A] district court may inquire into the merits of the claims presented in order to determine whether the requirements of Rule 23 are met, but not in order to determine whether the individual elements of each claim are satisfied." *Id.*

## IV. DISCUSSION

In order for a federal court to have jurisdiction over a claim, the plaintiff must have standing under Article III of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In considering the present motions, the central question is whether plaintiff has standing to bring this case.

For the reasons that follow, the Court concludes plaintiff fails to establish standing under Article III. Consequently, the Court grants Sava's Motion to Dismiss and denies plaintiff's Motion for Class Certification as moot.

## A. Defendant's Motion to Dismiss Plaintiff's Claim for Lack of Standing

To establish standing under Article III, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). Although violations of statutorily created rights may constitute an injury in fact, a plaintiff must allege more than "a bare procedural violation, divorced from any concrete harm." *Id.* at 1549.

"The party invoking federal jurisdiction bears the burden of establishing" each element of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

Standing is a "threshold question" which has been used to ensure that courts do not exceed their constitutional authority to assert jurisdiction over "cases and controversies." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88, 103 (1998); *Spokeo*, 136 S. Ct. at 1547. Consequently, the issue of standing must be resolved prior to reaching the question of class certification. *See In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616, 623–24 (D.N.J. 2005); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) ("Ordinarily, of course, [an] Article III court must be sure of its own jurisdiction before getting to the merits.").

In this case, Sava challenges the standing of the named plaintiff, not the putative class. Thus, the Court considers standing under Article III before addressing class certification under

Rule 23.  After considering the record, the Court concludes that (1) plaintiff has not suffered an injury in fact which is fairly traceable to Sava's alleged violation of the FCRA, and (2) a bare procedural violation of the FCRA's stand-alone disclosure requirement is insufficient to confer Article III standing.

### 1. Plaintiff's Alleged Injuries Insufficient to Confer Standing

Plaintiff argues that she experienced two injuries as a result of Sava's alleged FCRA violation.  First, plaintiff asserts that defendant invaded plaintiff's privacy by procuring her consumer report containing information about her 1999 conviction "despite the fact that [p]laintiff had no knowledge it was doing so." Pl. Resp. Mot. Dismiss 1.  Second, plaintiff states that she suffered a concrete injury when she lost her employment without any advance notice which would have allowed her time to search for new employment.  Pl. Resp. Mot. Dismiss 2.

To establish standing, plaintiff must show that (1) she suffered an injury in fact, (2) her injury was fairly traceable to Sava's alleged FCRA violation, and (3) her injury is likely to be redressed by a favorable judicial decision.  *Spokeo*, 136 S. Ct. at 1547.

The Court addresses each alleged injury in turn, evaluating whether the alleged harms are injuries in fact which are fairly traceable to the defendant's misconduct.  The Court concludes both claimed harms fail to meet the first two requirements of the *Spokeo* standing analysis.  As a result, the Court does not consider whether the alleged injuries are likely to be redressed by a favorable judicial decision.

### a. Invasion of Privacy

Plaintiff first argues that defendant invaded her privacy by procuring her consumer report without her knowledge.  As an initial matter, plaintiff must show that this first alleged harm is an injury in fact.

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (internal quotations omitted). Particularized simply means that the injury must affect the plaintiff in a "personal and individual way." *Id.* Because this alleged injury is a personal harm experienced by the plaintiff, and as such is particularized, the parties focus their briefing on the question of whether this harm is concrete. Concreteness requires a more expansive analysis.

### i.     *Injury in Fact - Concreteness*

In *Spokeo, Inc. v. Robins*, the Supreme Court stated that although "concrete" does not simply mean "tangible," i.e., economic or physical, in order to be "concrete," plaintiffs must demonstrate more than a "bare procedural violation." 136 S. Ct. at 1549. *Spokeo* instructs courts to look to "history and the judgment of Congress" to determine whether an intangible harm is sufficiently concrete. *Id.* "Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (*citing Lujan*, 504 U.S. at 578). Interpreting *Spokeo*, the Third Circuit stated that *Spokeo* reaffirmed that Congress "has the power to define injuries. . . that were previously inadequate under the law." *In re Horizon Healthcare Services Inc.*, 846 F.3d at 638 (citation and internal quotation marks omitted).

Plaintiff's claim, that she was injured when defendant invaded her privacy by procuring her consumer report without her knowledge, is an "intangible" harm. Therefore, in keeping with *Spokeo*, courts look to traditionally recognized harms and congressional intent to determine whether this injury is sufficiently concrete to confer standing. 136 S. Ct. at 1549.

The Third Circuit discussed the intangible harm of an invasion of privacy in *In re Horizon Healthcare Services Inc.*, stating:

> [W]ith the passage of the FCRA, Congress established that the unauthorized dissemination of personal information by a credit reporting agency causes an injury in and of itself – whether or not the disclosure of that information increased the risk of identity theft or some other future harm.

846 F.3d at 639 (finding that plaintiffs had suffered a cognizable injury where their private information was misappropriated when two unencrypted laptops were taken from Horizon Health Services, even without evidence that their information had been used improperly). This holding was based on both Congressional intent in creating the FCRA and the alleged injury's close relationship to the traditionally recognized harm of invasion of privacy. *Id.*

Citing *Horizon*, plaintiff argues that, based on the language of the FCRA's stand-alone disclosure requirement, Congress has "recognized the harm that occurs when an employee remains *unaware* that his or her consumer report is going to be procured despite receiving a document consisting of more than the disclosure. . . ." Pl. Resp. Mot. Dismiss 15. Furthermore, she argues that the traditionally recognized harm of invasion of privacy counsels in favor of recognizing plaintiff's lack of awareness as a concrete injury.

In facial challenges, in which courts are bound to consider the allegations of the complaint as true, courts have found standing where a plaintiff alleges unawareness because of a violation of the FCRA's stand-alone disclosure requirement and rejected standing where a plaintiff fails to make such allegations. *Compare Syed v. M-I, LLC,* 853 F.3d 492, 499–500 (9th Cir. 2017) (holding that defendant's violation of the FCRA's stand alone disclosure requirement was sufficient to confer standing because the plaintiff alleged that "he was not aware that he was signing a waiver authorizing the credit check when he signed it.") *with Groshek v. Time Warner Cable, Inc.,* 865 F.3d 884, 887-889 (7th Cir. 2017) (holding appellee's violations of the FCRA's stand-alone disclosure requirement were insufficient to confer standing where appellant did not allege that additional information included in the disclosure "caused him to not understand the

consent he was giving," that "he would not have provided consent but for the extraneous information on the form," that the additional information "caused him to be confused," or that he was "unaware that a consumer report would be procured.").

The present case, however, is distinct because defendant's motion to dismiss is a factual challenge under Rule 12(b)(1). Plaintiff alleges that she was "unaware" that she was consenting to a consumer report and had no knowledge that a background check might be run. Sec. Am. Compl. ¶¶ 31, 32. She further alleges that this lack of awareness was due to Sava's failure to provide her with any document "consisting solely of a disclosure that a consumer report could be obtained for the purposes of her employment." *Id.* Notwithstanding, because the defendant has presented a factual challenge to plaintiff's Second Amended Complaint under Rule 12(b)(1), the Court has the benefit of using the factual record in deciding this motion and "no presumptive truthfulness attaches to plaintiff's allegations." *Mortensen*, 549 F.2d at 891.

The facts overwhelmingly counsel against the conclusion that plaintiff was "unaware" she had consented to a background check. First, plaintiff does not contend that the text of defendant's disclosure form omitted any of plaintiff's rights under FCRA. Plaintiff's only contentions are (1) that the form included one sentence of extraneous information and (2) that the form was given to plaintiff as part of a booklet of other forms, as opposed to a single loose leaf piece of paper. Pl. Resp. Mot. Dismiss 2–3; Sec. Am. Compl. ¶¶ 12–13. These alleged violations do not inherently change the meaning of the form or make the document more confusing.

Second, although plaintiff testified that she has no memory of receiving the EDB or filling out any of the forms therein, she also testified that she typically reads documents before she signs them. Dolison Dep. at 22:12. Furthermore, despite her professed lack of memory,

14

plaintiff filled out the Consent Form in a detailed manner and responded to a question about her prior felony conviction. Def. Mot to Dismiss, Ex. 3. On a copy of the form dated November 29, 2013, plaintiff wrote her name, address, date of birth, social security number, and, where she was asked "Have you ever been convicted of or plead guilty to a crime (felony or misdemeanor) other than a minor traffic violation?", plaintiff marked "yes," indicating that she had. *Id.* At the bottom of the form, plaintiff's signature appears next to the date. *Id.* Plaintiff does not dispute that the handwriting on the form resembles hers or that the signature on the form is hers. Pl. Resp. Mot. Dismiss 4.

Therefore, as an initial matter, significant evidence mitigates against the conclusion that plaintiff was unaware that she consented to a background check. However, assuming arguendo that plaintiff was "unaware" – a conclusion that the Court refrains from reaching in this opinion – she has not successfully tied this lack of awareness to defendant's alleged FCRA violations.

### ii.    *Fairly Traceable to Conduct of Defendant*

In order to establish Article III standing, plaintiffs must also show that their injury in fact was "fairly traceable" to the misconduct of the defendant. *Spokeo*, 136 S. Ct. at 1547. Even if plaintiff were able to successfully demonstrate her own lack of awareness that she had consented to a background check, she would also need to show that she was unaware *because of* Sava's violation of the stand-alone disclosure requirement. She cannot, for example, establish standing simply because she did not read the disclosure form before signing it. Similarly, plaintiff cannot establish standing if she read the form and simply did not understand the language used or skimmed the form and promptly forgot about it. To the contrary, to avoid dismissal for lack of

standing, plaintiff must show that her lack of awareness was caused by the inclusion of the document in the EDB and/or the addition of an extraneous sentence related to liability.[3]

Such a requirement might be met if plaintiff testified that she was confused by her rights based on the extraneous sentence or that she thought the information she provided on the form was related to a prior page in the EDB. However, during plaintiff's deposition she stated that she has no memory, whatsoever, of receiving or filling out the EDB in 2013. This deposition testimony undermines the conclusory assertion in plaintiff's complaint that she was unaware "as a result" of Sava's failure to provide the Consent Form as a single loose piece of paper. As defendant points out in its motion "[p]laintiff does not allege that she did not see the Disclosure Form, did not read the Disclosure Form, failed to understand the contents of the Disclosure Form, signed the Disclosure Form by mistake, did not intend to authorize the procurement of her background report, or would not have done so had she received a compliant disclosure form." Def. Mot. Dismiss 12. Yet, as discussed above, plaintiff filled out the form in detail in November of 2013.

Plaintiff's contentions are further undermined by the general compliance of the disclosure form with the FCRA. Specifically, neither party asserts that the disclosure form provided an incomplete summary of plaintiff's rights under the FCRA or that the information was inaccurate.

In an attempt to salvage her argument, plaintiff contends that courts have found that standing was sufficiently established where plaintiffs allege "unawareness" and that courts have not required plaintiffs to allege causation, citing *Syed v. M-I, LLC,* 853 F.3d 492, 499–500 (9th Cir. 2017). Pl. Resp. Mot. Dismiss 23. However, as noted by the defendant, *Syed* was a facial attack prior to the development of the record through discovery. This Court will not ignore the

---

[3] The extraneous sentence disclaiming liability is set out in full in the "Background" section of this Memorandum. *See supra* at 3.

second step in *Spokeo*'s three-part standing analysis – an injury traceable to defendant's conduct – on the ground that a case in the Ninth Circuit appeared to infer causation in response to a facial attack on standing.

In sum, plaintiff failed to carry her burden to show that she was unaware that she had consented to a background check or that any lack of awareness is fairly traceable to defendant's alleged FCRA violations.

### b. Terminated Without Advance Notice

Plaintiff's second asserted injury is that she was harmed when she lost her job at the Broomall Center without any advance notice which would have allowed her time to search for new employment. In making this argument, plaintiff cites caselaw holding that a plaintiff's "loss of employment is without question a concrete and particularized injury." *Ferguson v. DIRECTV, LLC*, No. 15-2636, 2017 U.S. Dist. LEXIS 26158, at *9 (N.D. Ohio Feb 22, 2017). In plaintiff's thirty-one page response brief, plaintiff includes only a single paragraph in support of this argument. In relevant part it states that "[p]laintiff could have started searching for a new job sooner had she known that [d]efendant was procuring her consumer report and the consequences of it to her employment, but instead remained unaware of this fact until she was terminated." Pl. Resp. Mot. Dismiss 24.

Plaintiff's claims with respect to her alleged loss of employment injury are premised on the idea that she was unaware she had consented to a background check and, as a result, had no warning that her employment might be terminated. As discussed *supra* with respect to plaintiff's alleged violation of privacy injury, significant evidence mitigates against the conclusion that plaintiff was unaware that she consented to a background check. Such evidence includes plaintiff's signature on a Consent Form authorizing defendant to conduct a background check

and plaintiff's deposition testimony stating that she cannot recall filling out any of the documents in the EBD but that she typically reads documents before signing them. Dolison Dep. at 22:12, 68:16–69:14. Furthermore, assuming arguendo that plaintiff was "unaware," she has not successfully tied this lack of awareness to defendant's alleged FCRA violations. In fact, evidence in the record, discussed *supra*, undermines any conclusory allegations that plaintiff was unaware because of defendant's conduct.

For the foregoing reasons, and without addressing the viability of this alleged harm as a concrete injury, the Court concludes that plaintiff has not established that she was unaware that she had consented to a background check or that any lack of awareness was fairly traceable to defendant's alleged FCRA violations.

In sum, in this 12(b)(1) factual inquiry, plaintiff failed to carry her burden to show that either of her alleged harms constitute injuries in fact that are fairly traceable to defendant's alleged FCRA violations.

## 2. Sava's Alleged Procedural Violation Insufficient to Confer Standing

In the alternative, plaintiff argues that even if the Court finds that she did not suffer a concrete injury that was traceable to the alleged FCRA violations, the Court should hold that defendant's violation of the stand-alone disclosure requirement, by itself, is sufficient to confer standing.

In support of this argument plaintiff cites an Eastern District of Virginia case, *Thomas v. FTS USA, LLC,* 193 F. Supp. 3d 623, 637 (E.D. Va. 2016). The *Thomas* court held that some statutory violations of the stand-alone disclosure requirement, by themselves, are sufficient to confer standing. *Thomas* states that § 1681b(b)(2) creates two statutory rights:

> First, a legally cognizable right to receive a disclosure that is clear, conspicuous, and unencumbered by extraneous information; and second, a right to the privacy

of one's personal information, which an employer may not invade without first providing the above information and obtaining the consumer's express written consent.

*Id.* at 634.  In that case, where the plaintiff alleged that he did not receive a disclosure that was both clear and conspicuous and "in a document consisting solely of the disclosure, the Court determined that the plaintiff had standing.

The analysis in *Thomas* was adopted in one Eastern District of Pennsylvania case, *Tonge v. Fundamental Labor Strategies*, 277 F. Supp.3d 809 (E.D. Pa. 2017) (McHugh, J.).  In *Tonge*, the plaintiff alleged that her rights under the FCRA were violated when she applied for a trucking job because (1) her consumer report was requested based on an inadequate disclosure form, and (2) her job application was denied based on the report's contents without first giving her a copy of the report and a summary of her rights under the FCRA.  *Id.* at 813–14.  In contrast with the present case, the parties agreed that the consent form signed by the plaintiff in *Tonge* did not accurately describe her rights under the FCRA.[4]  *Id.* at 814; *see also Tonge v. CPC Logistics, Inc.*, No. 16-09579, 2018 WL 4510258, at *5-6 (D.N.J. Sept. 20, 2018) (distinguishing *Tonge v. Fundamental Labor Strategies*, and finding that plaintiff had not established standing where plaintiff did not dispute that she had been given all of the requested information under FCRA and only contested the manner by which she received it).

In the present case, neither party contends that the explanation of the FCRA rights provided to plaintiff were inaccurate or incomplete.  Instead, plaintiff agreed that she received all of the information required by FCRA.  The only alleged violations in this case are the inclusion of an additional sentence related to liability and the fact that the one-page form was included in the EDB, a stapled booklet, along with other forms that were a part of the re-application process.

---

[4] Specifically, the consent form instructed plaintiff that she had the right to view her background check *after* any adverse action had been taken as opposed to *before*.  *Id.* at 814.

The irony in the present case is that if plaintiff had been handed thirty-five loose leaf forms as a part of her re-application process, instead of a booklet consisting of thirty-five forms stapled together, there is no reason to believe that she would have been more likely to read or digest the substance of the forms. Furthermore, if the form had not included a liability waiver sentence, there is no reason to believe that the plaintiff would have been more likely to understand that she was consenting to a background check. This type of structural variation is exactly the type of bare procedural violation that *Spokeo* warns against. In *Spokeo*, the Supreme Court stated that a plaintiff:

> [c]annot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Spokeo*, 136 S. Ct. at 1550. Following *Spokeo*, this Court concludes that the FCRA violations alleged in this case are bare procedural violations which do not create a "material risk of harm" and declines to extend the *Thomas* analysis to the present case.

This Court is not alone in rejecting *Thomas*. *See In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig.*, No. 2615, 2017 WL 354023, at *7 (D.N.J. Jan. 24, 2017) (disagreeing with *Thomas*'s conclusion that the disclosure requirements set forth in § 1681b(b)(2)(A)(i) are substantive rather than procedural).

> The right to know about and effectively consent to a search of one's personal background may well be considered substantive. That the disclosure at issue be contained in a separate document, however, does not correspond to any right traditionally recognized at law. Nor is there is any indication that Congress, in requiring it, was elevating it to a substantive right. It is no more than a procedural means to a substantive end. The stand-alone requirement is no less procedural than a hypothetical requirement that the disclosure be printed with double spacing

or in a given font. Indeed, if a disclosure that flunks the stand-alone test automatically counts as a concrete informational injury, then it is hard to imagine a statutory violation that would not cause some form of informational injury.

*Id.* at *7 (internal quotations omitted); s*ee also Stacy v. Dollar Tree Stores, Inc.*, 274 F. Supp. 3d 1355, 1363 (S.D. Fla. 2017) ("[T]he Court joins the vast majority of other courts" in concluding that "violation of the FCRA's stand-alone document requirement does not automatically cause a concrete injury for purposes of Article III standing.").

In sum, the Court concludes that a violation of the FCRA's stand-alone disclosure requirement constitutes a bare procedural violation that is insufficient to create standing.

### B.  Class Certification

"[A]s a prerequisite to certification, it must be established that the proposed class representatives have standing to pursue the claims as to which classwide relief is sought." *Wooden v. Bd. of Regents of the Univ. Sys.*, 247 F.3d 1262, 1287 (11th Cir. 2001); *accord Davis v. Thornburgh*, 903 F.2d 212, 222 (3d Cir. 1990).  Where the named plaintiff is unable to establish the requisite "case or controversy" under Article III prior to class certification, "dismissal of the action is required."  *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992); *accord O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

In this case, as discussed above, plaintiff does not have standing under Article III to bring a claim for a violation of 15 U.S.C. 1681b(b)(2)(A) against Sava.

Two exceptions apply to the general rule that failure to satisfy the requirements of Article III prior to class certification requires the dismissal of those claims.[5]  First, where the named plaintiff "has a live individual claim when the district court decides the class certification issue,

---

[5] Although both *Geraghty* and *Roper* address mootness under Article III, the concepts of mootness and standing are closely related, and where it is "evident" that the named plaintiffs lost the personal stake in the case required by Article III prior to filing for class certification, "the difference between 'standing' and 'mootness' is essentially a semantic one."  *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 227 n.17 (3d Cir. 2012).

or, at the very least, he had a live claim when he filed for class certification," he or she retains the "the requisite personal stake" in the litigation to pursue class certification or to appeal the denial of certification. *Lusardi*, 975 F.2d at 977 (citing *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 404–05 (1980)); *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135-36 (3d Cir. 2000). Second, the Supreme Court has also held that a rejected settlement offer of the full relief a plaintiff could hope to receive does not moot a plaintiff's class claims. *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339–40 (1980). Neither exception is applicable in this case where plaintiff lacked standing before she filed the motion for class certification and there is no argument that plaintiff rejected any settlement offer, or that such a rejection impacted her standing in the case.

Where, as in this case, the plaintiff does not satisfy the standing requirements of Article III for the claims asserted on behalf of the class, the Court cannot address the class certification issues under Rule 23 and must dismiss the class claims.

### 1. Dismissal With/Without Prejudice

Ordinarily, dismissals for lack of standing are without prejudice to a plaintiff's right to file an amended complaint. *Goode v. City of Phila.*, 539 F.3d 311, 327 (3d Cir. 2008). Where, however, the parties have had adequate time to brief the controlling legal issues and develop the factual record, dismissal with prejudice may be warranted. *See In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 277 (E.D. Pa. 2012) (dismissing with prejudice after failing to adequately allege an "an injury in fact that is fairly traceable to the conduct of the defendants" in two successive complaints). Dismissal with prejudice is likewise warranted where amendment would be futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

In this case, plaintiff has developed a factual record over nearly four years of litigation. She has had multiple opportunities to refine her argument, including the filing of her Amended Complaint, Second Amended Complaint, Motion for Class Certification, and Response to Defendant's Motion to Dismiss. Thus, the Court concludes that amendment would be futile with respect to named plaintiff's individual claims. Consequently, named plaintiff's individual claims under 15 U.S.C. § 1681b(b)(2)(A) are dismissed with prejudice.

The members of the putative class, however, may have experienced a concrete harm as a result of defendant's alleged failure to comply with the stand-alone disclosure requirement or the extraneous sentence related to waiving liability. Thus, amendment of the Second Amended Complaint would not be futile with respect to the claims of the putative class, and those claims are dismissed without prejudice.

## V.      CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss Plaintiff's Claim for Lack of Standing is granted and the remaining claims under 15 U.S.C. § 1681b(b)(2)(A) – the "First Claim for Relief" – in the Second Amended Complaint are dismissed.[6] Named plaintiff Tanya Dolison's individual claims are dismissed with prejudice, as amendment of the Second Amended Complaint would be futile with respect to her individual claims. The claims of the putative class are dismissed without prejudice. Plaintiff's motion for class certification is denied.

An appropriate Order follows.

---

[6] The Court dismissed plaintiff's "Second Claim for Relief" on July 20, 2017, after defendant filed a Motion to Dismiss that claim and plaintiff did not oppose the motion.